SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Melvin White, ) | No. CV 1-04-06645-JMR |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Golden State Eye Center, et al., ) | |
| Defendants. ) | |

This case was reassigned to the undersigned judge on November 25, 2008, 2008. (Doc.# 25.)[1] Plaintiff William Melvin White, who is confined in the Kern Valley State Prison in Delano, California, has filed *pro se* a Second Amended Complaint pursuant to 42 U.S.C. § 1983.[2] (Doc.# 22.) Defendants Morton and Weiss are ordered to answer Plaintiff's claims for deliberate indifference to his serious medical needs in the Second Amended Complaint and the remaining claims and Defendants are dismissed without prejudice.

---

[1] "Doc.#" refers to the docket number of filings in this case.

[2] The Second Amended Complaint supersedes the original and the first amended complaints in their entirety. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

JDDL

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## II. Second Amended Complaint

Plaintiff alleges constitutionally deficient medical care and failure to train while he was incarcerated at Corcoran State Prison (Corcoran) I and II. Plaintiff sues two entities that contracted with the California Department of Corrections (CDC) to provide medical care to inmates: (1) Golden State Eye Center (Golden State), and (2) Limberg Eye Surgery (Limberg). Plaintiff also sues Drs. Ronald Morton and John Weiss, who worked for Golden State, and Dr. Hill (or Hall),[3] who worked for Limberg. Plaintiff also sues the CDC and CDC employees: Corcoran I Warden A.K. Scribner; Prison Transportation Officer Roberts; Dr. Afinowicz; and the Chief Medical Officers of Corcoran I and II; and John Does I-VI. Plaintiff seeks compensatory, punitive, and injunctive relief.

Plaintiff alleges that: On December 4, 2002, he was transported from Corcoran II[4] to Golden State to have a cataract removed from his right eye. (Doc.# 22 at 2A.) Dr. Morton, an eye surgeon at Golden State, allowed his anesthesiologist, Dr. Weiss, to perform Plaintiff's eye surgery, although Weiss was not a qualified or licensed ophthalmologist or surgeon, so that Weiss could learn eye surgery. (Id.) Dr. Morton was absent from the room throughout the surgery despite knowing that Dr. Weiss was not trained to perform the surgery. (Id. at 2B.) Further, Dr. Weiss knew or should have known that he was not adequately trained and was likely to injure Plaintiff. (Id.) The following day, Plaintiff was

---

[3] Although it is unclear whether the physician's name is Hill or Hall, the physician will be referred to as Dr. Hill.

[4] Specifically, the Substance Abuse Treatment Facility. (Id. at 2A.)

again transported to Golden State, where Dr. Morton relieved pressure in the eye from the previous day's surgery by inserting a needle into it. (Id. at 2A.) Plaintiff suffered "unbelievable pain" both days, and thereafter, for which Dr. Morton prescribed pain medication. (Id.) Plaintiff continues to suffer pain from the treatment complained of in his Second Amended Complaint. (Id.)

On December 12, 2002, Plaintiff was again transported to Golden State. (Id.) Plaintiff contends that Officer Roberts and an unidentified CDC sergeant (Doe I) refused Plaintiff's request to return to his cell or to allow him to get his diabetes medication prior to transport. (Id. at 2D.) As a result, Plaintiff lacked his medication and vomited during the trip due to pain. (Id. at 2A.) At Golden State, Dr. Morton again used a needle to alleviate pressure in the eye, but realized the surgery had been botched. (Id.) In an attempt to cover-up his misconduct, Dr. Morton had Plaintiff transported, against his will, to Limberg that day. (Id.)

At Limberg, Dr. Hill (or Hall) performed a surgical procedure on Plaintiff's eye.[5] (Id. at 2A-2B.) Subsequently, Plaintiff was transported three additional times to Limberg for follow-up care. (Id. at 2B.) A Limberg surgeon, apparently Dr. Hill, told Plaintiff that he had repaired Dr. Weiss's mistake, but that the lens in the eye was hanging and that a lot of the cataract remained as a result of Dr. Weiss's "shoddy work." (Id.) He also informed Plaintiff that the damage to his eye was caused by Dr. Morton's use of a needle to relieve pressure in the eye. (Id.) Plaintiff asserts that despite contrary assurances, Dr. Hill had actually destroyed his retina and removed the corrective lens placed in the eye by Golden State. (Id.) Although Dr. Hill said that, if prison officials allowed, he would replace the lens when Plaintiff's eye got better, Plaintiff received no more treatment at Limberg. (Id.) On April 16, 2003, Plaintiff was transferred to Corcoran I and his medical care was "abandoned" by Golden State, Limberg, and the State. (Id.)

On May 23, 2003, prison ophthalmologist Dr. Afinowicz informed Plaintiff that his

---

[5] According to Plaintiff, Limberg contracted with the CDC to provide medical care.

- 3 -
JDDL

optic nerve was dead, confirmed that he was blind in his right eye, and told Plaintiff there was nothing he could do. (Id. at 2B-2C.) Dr. Afinowicz failed to ensure that Plaintiff continued to receive adequate pain medication despite pain so intense that it frequently caused Plaintiff to vomit. (Id. at 2C.) During the visit, Does III and IV placed Plaintiff into "a tiny administration segregation cell for no reason." (Id. at 2C, 2G.) Plaintiff reported the problems related to his cataract surgery to the Chief Medical Officer (CMO) for Corcoron I, who assured Plaintiff that he would investigate, but prison records available to Plaintiff do not reflect that he did so. (Id. at 2C.)

Plaintiff additionally alleges that unidentified transportation officers conspired and acted in concert with Dr. Morton on December 4, 2002, to conceal from Plaintiff that Dr. Weiss, rather than Morton, performed the surgery by lying about who performed the surgery.[6] (Id.) Plaintiff does not, however, identify these transport officers as any particular Defendant. (Id. at 2C, 2G.) Plaintiff also alleges a failure to train transport officers by transfer sergeant, Doe I, Warden Scribner of Corcoran I, and Doe VI, the warden of Corcoran II. (Id. at 2C.) Plaintiff alleges that Doe V, a counselor, violated Plaintiff's right of access to the courts by falsely telling him there was no record of the transport officers, who allegedly abused him. (Id.) Plaintiff alleges that Doe VI, the Corcoran II warden, and the CMO of Corcoran II, approved Plaintiff's transfer to Golden State and Limberg pursuant to a policy that lacked "proper screening" for competence. (Id. at 2D.) Plaintiff also contends they failed to train Corcoran II medical staff to provide adequate pain medication and that the CMO of Corcoran II approved a change to a less potent pain medication. (Id.) Plaintiff similarly contends that Scribner, the Corcoran I warden, and the CMO of Corcoran I failed to train Corcoran I medical staff to provide adequate pain medication and that the Corcoran I CMO knowingly approved the provision of inadequate pain medication to him. (Id.) Plaintiff alleges that Doe II, a medical staff person, discontinued pain medication prescribed by Morton and knowingly provided an inadequate substitute. (Id. at 2C, 2F.)

---

[6] Plaintiff also alleges, however, that he was awake throughout the surgery.

/ / /

**III. Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A. CDC**

Plaintiff sues the CDC for injunctive relief. The CDC is not, however, a proper Defendant under § 1983. Under the Eleventh Amendment to the Constitution of the United States, a state or its agencies may not be sued in federal court without its consent. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "In the absence of waiver by the state or a valid congressional override, '[u]nder the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.'" Dittman v. State of California, 191 F.3d 120, 1025 (9th Cir. 1999) (quoting Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir.1989)). The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985), and the United States Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity, Kentucky v. Graham, 473U.S. 159, 169 n. 17 (1985). The State of California and its arms, such as the CDC, also are not "persons" within the meaning of § 1983. See Pennhurst, 465 U.S. at 106; Seminole Tribe of Florida v. Florida, 517 U.S. 44, 53-54 (1996); see also Hale v. State of Arizona, 993 F.2d 1387, 1398 (9th Cir. 1993) (*en banc*); Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1327 (9th Cir. 1991). Accordingly, the CDC will be dismissed.

/   /   /

**B.    Golden State and Limberg**

Plaintiff seeks relief in part against Golden State and Limberg, which are private entities. A private actor can be found to have engaged in state action for purposes of § 1983 if: (1) the private actor performs a public function, (2) the private actor engages in joint activity with a state actor, (3) the private actor is subject to governmental compulsion or coercion, or (4) there is a governmental nexus with the private actor. Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir. 2003). Under the public function test, "the function [performed by the private actor] must traditionally be the exclusive prerogative of the state." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995); see Kirtley, 326 F.3d at 1093; Lee v. Katz, 276 F.3d 550, 554-555 (9th Cir. 2002). Additionally, to state a claim under § 1983 against a private entity performing a traditional public function, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Wall v. Dion, 257 F. Supp.2d 316, 319 (D. Me 2003); see also Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982). Further, liability against a private entity under § 1983 may not be based on *respondeat superior*, i.e., the acts or omissions of an entity's employees, absent allegations to support that the plaintiff's constitutional rights were violated pursuant to a policy or practice of the private entity. Burke v. North Dakota Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002); Austin, 195 F.3d at 728; Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir. 1993) ("a corporation acting under color of state law will only be held liable under § 1983 for its own constitutional policies."); Dashly v. Correctional Med. Servs., Inc., 345 F. Supp.2d 1018, 1022 (E.D. Mo. 2004).

Plaintiff alleges that the CDC contracted with Golden State and Limberg to provide

medical care for inmates. A private entity that contracts with a state or municipality to provide medical care to inmates is performing a traditional public function, i.e., the provision of medical care to the incarcerated. See e.g., West v. Atkins, 487 U.S. 42, 51, 52 n.10 (1988); Buckner, 116 F.3d at 452; Conner v. Donnelly, 42 F.3d 220, 224-25 (4th Cir. 1994); Tatsch-Corbin v. Feathers, 561 F.Supp. 2d 538, 543 (W.D. Pa. 2008); Anglin v. City of Aspen, 552 F. Supp.2d 1229, 1241-42 (D. Colo. 2008); Higgins v. Correctional Med. Servs of Ill., Inc., 8 F. Supp.2d 821, 831 (N.D. Ill. 1998). Plaintiff fails, however, to allege facts sufficient to support his constitutional claim that medical care was violated pursuant to a policy or custom promulgated or endorsed by Golden State or Limberg. See Dashley, 345 F. Supp.2d at 1021. For that reason, Plaintiff fails to state a claim under § 1983 against Golden State or Limberg. Accordingly, they must be dismissed.

### C. Does III and IV and Transport Allegations

Plaintiff sues Does III and IV, whom he identifies as "officers responsible for mistreatment of Plaintiff on 5-23-03 and during other transport." (Doc.# 22 at 2G.) The only facts directly alleged against prison officers on May 23, 2003, is that prison officers placed Plaintiff "into a tiny administration segregation cell for no reason." (Id. at 2C.) Although Plaintiff otherwise generally asserts that he was sometimes unnecessarily transported, shackled too tightly, and denied access to restroom facilities, Plaintiff fails to allege facts to connect Does III and IV, or any other Defendant, specifically to that conduct. In short, Plaintiff's allegations against Does III and IV do not rise to the level of a constitutional claim and Plaintiff's general allegations regarding mistreatment during transport are not supported by facts linking the alleged conduct to any particular Defendant. Accordingly, Does III and IV, and Plaintiff's claims regarding transport must be dismissed for failure to state a claim.

### D. Medical Care

Plaintiff alleges that Transport Officer Roberts, Dr. Hill, Dr. Afinowicz, the CMOs of Corcoran I and II, Scribner, and Does I, II, and VI violated his right to constitutionally adequate medical care. To state a claim for denial of constitutionally adequate medical care, a plaintiff must allege facts sufficient to show that he has or had a serious medical need and

that a particular defendant acted with deliberate indifference to that need. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003). To allege a serious medical need, a plaintiff must set forth facts to support that the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)). A plaintiff must also demonstrate that a defendant was deliberately indifferent to a serious medical need. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Mere negligence, however, "in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Lopez, 203 F.3d at 1132 (quoting Hutchinson, 838 F.2d at 394). Further, a delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A difference in medical opinion also does not amount to deliberate indifference. See Toguchi, 391 F.3d at 1058. Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. Id. Similarly, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

**Transport Officer Roberts and Doe I**

Plaintiff alleges that on December 12, 2002, Officer Roberts and transfer sergeant, Doe I, refused Plaintiff's request to return to his cell or to allow him to get his diabetes medication prior to transport. (Doc.# 22 at 2D.) As a result, Plaintiff lacked his medication

1 and vomited during the entire trip due to pain. (Id.) Plaintiff fails to allege facts indicating that Roberts or Doe I knew that Plaintiff had a serious medical need requiring medication prior to transport. Plaintiff also fails to allege facts showing that they refused to allow Plaintiff to return to his cell for the medication to intentionally interfere with prescribed medical care. Plaintiff therefore fails to state a claim for deliberate indifference to his serious medical needs against Roberts or Doe I.

**Dr. Hill**

Plaintiff alleges that on December 12, 2002, Dr. Hill performed a surgical procedure in an attempt to correct the botched eye surgery, but that Hill actually destroyed his retina and removed the corrective lens placed in the eye by Golden State. Plaintiff fails to allege facts to support that Dr. Hill was anything more than negligent in attempting to correct the earlier surgery. Negligence by a defendant acting under color of state law is not sufficient to state a claim under § 1983. Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (plaintiff must plead more than mere negligence in a § 1983 action); see also Alfrey v. United States, 276 F.3d 557, 568 (9th Cir. 2002); Lopez, 203 F.3d at 1132. Accordingly, this Defendant will be dismissed.

**Dr. Afinowicz**

Plaintiff alleges that on May 23, 2003, Dr. Afinowicz informed him that his optic nerve was dead, confirmed that he was blind in his right eye, and told him there was nothing he could do. Plaintiff further alleges that Dr. Afinowicz failed to ensure that he continued to receive adequate pain medication despite pain so intense that it frequently caused him to vomit. Plaintiff fails to allege facts showing that Dr. Afinowicz acted with deliberate indifference to his serious medical needs. Plaintiff acknowledges that he was provided pain medication but disagrees with the medication used. Plaintiff's disagreement with Dr. Afinowicz about appropriate pain medication is not sufficient to state a claim for deliberate indifference against Dr. Afinowicz. See Sanchez, 891 F.2d at 242. Accordingly, these allegations must be dismissed.

/ / /

**Scribner, CMOs, and Does II and VI**

Plaintiff alleges that the CMO of Corcoran I failed to investigate his allegations concerning his eye treatment. He alleges that Scribner and the CMO of Corcoran I failed to train Corcoran I medical staff to provide adequate pain medication and that the CMO knowingly approved the provision of inadequate pain medication. He alleges that Doe VI, the warden of Corcoran II, and the CMO for Corcoran II approved his treatment at Golden State and Limberg without properly screening them for competence. He also alleges that they failed to train Corcoran II medical staff to provide adequate pain medication and that the CMO of Corcoran II approved a change to a less potent pain medication. Finally, Plaintiff alleges that Doe II, a medical staff member, discontinued pain medication prescribed by Dr. Morton and knowingly provided an inadequate substitute.

All of these allegations are vague and conclusory. To the extent that Plaintiff alleges that medical staff knowingly substituted less potent pain medication, Plaintiff alleges nothing more than his disagreement with the treatment provided by medical staff. That is insufficient to state a claim for deliberate indifference to his serious medical needs. See Sanchez, 891 F.2d at 242. These allegations must be dismissed for failure to state a claim.

**D.     Failure to Train**

Plaintiff alleges that the wardens of Corcoran I and II, i.e., Scribner and Doe VI, and transfer sergeant, Doe I, failed to properly train transport officers. He also alleges that they, and the CMOs of Corcoran I and II, failed to train their respective medical staff to provide adequate pain medication.

To state a claim for failure to train, a plaintiff must allege facts showing that the alleged failure amounted to deliberate indifference. Edgerly v. City and County of San Francisco, 495 F.3d 645, 661 (9th Cir. 2007) (citing Cannell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that, to establish supervisor liability for failure to train, a plaintiff must show that the failure "amounted to deliberate indifference"). A plaintiff must allege facts showing that not only was the particular training inadequate, but also such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the

1 defendant. Cannell, 143 F.3d at 1213; see also Clement v. Gomez, 298 F.3d 898, 905 (9th
2 Cir. 2002) (a plaintiff must allege facts showing that "in light of the duties assigned to
3 specific officers or employees, the need for more or different training is obvious, and the
4 inadequacy so likely to result in violations of constitutional rights, that the policy-makers ...
5 can reasonably be said to have been deliberately indifferent to the need.").

Plaintiff makes only vague and conclusory assertions that any Defendant failed to adequately train staff regarding the provision of pain medication. He also fails to allege facts to support that any particular training regarding transport was deficient or that such deficiency was the result of a deliberate choice. For these reasons, Plaintiff fails to state a claim for failure to train against any Defendant.

### E. Access to the Courts

Plaintiff alleges that Doe V, a counselor, violated Plaintiff's right of access to the courts by falsely telling Plaintiff there was no record of the names of the officers who transported him. The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or file legal documents. Lewis v. Casey, 518 U.S. 343, 350 (1996). That right, however, only encompasses the ability to bring petitions or complaints to federal court and not to discover or even effectively litigate such claims once filed with a court. Id. at 354; see also Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.") The right "guarantees no particular methodology but rather, the conferral of a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356. Further, the denial of access to a paralegal or use of a law library is not actionable if there is no claim of prejudice to an existing or future legal action. Id. at 351-53. An inmate must establish that he suffered an "actual injury" when he alleges that he was denied access to a paralegal or a law library. See Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present

1  a claim." Lewis, 518 U.S. at 348. In other words, a plaintiff must allege facts to support that
2  a defendant's conduct prevented him from bringing to court a non-frivolous claim that he
3  wished to present. Id. at 351-53.

4  Plaintiff fails to allege facts showing that any Defendant denied him the ability to file
5  any contemplated challenge in state or federal court in connection with civil litigation.
6  Plaintiff also fails to allege facts to support that he suffered an actual injury, i.e., actual
7  prejudice to contemplated or existing litigation. For these reasons, he fails to state a claim
8  for denial of access to the courts.

9  **IV.    Claims for Which an Answer Will be Required**

10  Plaintiff alleges that Dr. Morton, the eye surgeon at Golden State, allowed the
11  anesthesiologist, Dr. Weiss, to perform Plaintiff's eye surgery on December 4, 2002.
12  Plaintiff alleges that Dr. Weiss was not a qualified or licensed ophthalmologist or surgeon,
13  and that Plaintiff was used as a "guinea pig" for Dr. Weiss to learn eye surgery. Plaintiff
14  alleges that Drs. Weiss and Morton knew or should have known that Weiss was not
15  adequately trained and was likely to injure Plaintiff. As a consequence of the alleged
16  misconduct by Drs. Morton and Weiss, Plaintiff alleges that he is blind in one eye and his
17  other eye has been damaged. Plaintiff sufficiently states a claim for deliberate indifference
18  to his serious medical needs against Drs. Morton and Weiss. Accordingly, they will be
19  required to respond to the Second Amended Complaint.

20  **V.    Warnings**

21  **A.    Address Changes**

22  Plaintiff must file and serve a notice of a change of address in accordance with Rule
23  83-182(f) and 83-183(b) of the Local Rules of Civil Procedure. Plaintiff must not include
24  a motion for other relief with a notice of change of address. Failure to comply may result in
25  dismissal of this action.

26  **B.    Copies**

27  Plaintiff must submit an additional copy of every filing for use by the Court. See
28  LRCiv 5-133(d)(2). Failure to comply may result in the filing being stricken without further

1 | notice to Plaintiff.

2 | **C.  Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's claims for failure to train, denial of access to the courts, and deliberate indifference to his serious medical needs (in part) and Defendants Golden State Eye Center, Limberg Eye Surgery, Dr. Hill (or Hall), the Chief Medical Officers of Corcoran State Prison I and II, Scribner, the California Department of Corrections, and Does I-VI are **dismissed** without prejudice.  (Doc.# 22.)

(2)     Defendants Morton and Weiss must answer Plaintiff's claims for deliberate indifference to his serious medical needs alleged against them in the Second Amended Complaint.  (Doc.# 22.)

(3)     The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (doc.# 22), this Order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants Morton and Weiss.

(4)     Within **30 days** of the date of filing of this Order, Plaintiff must complete and return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit with the Notice of Submission of Documents: a copy of the Second Amended Complaint for each Defendant, a copy of this Order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(5)     Plaintiff must not attempt service on Defendants and must not request waiver of service. Once the Clerk of Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

1     (6) **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this Order, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice.** See **Fed. R. Civ. P. 41(b).**

DATED this 25th day of March, 2009.

*(signed)* John M. Roll
Chief United States District Judge

JDDL